**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| DELANO S. PRINCE, II,<br><br>Plaintiff,<br><br>v.<br><br>DESOTO TEXAS POLICE DEPARTMENT, *et al.*,<br><br>Defendants. | 3:26-cv-00001-ACP<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>[Dkt. 19] |

Delano Prince was convicted for rape and forcible sodomy in Oklahoma. After serving prison time, he moved to Texas and registered as a sex offender. He then left Texas and lived elsewhere for over a decade. Eventually, Texas Detective Teddy Jones reviewed Prince's file and concluded that he was violating a Texas law imposing registration obligations on sex offenders who leave the state. A Texas judge found probable cause for the violation and issued an arrest warrant. Because Jones lived in Alaska at the time, the warrant was sent to Alaska and the Anchorage Police Department arrested Prince. Ultimately, he was never prosecuted.

Prince then filed this lawsuit alleging that Detective Jones and the DeSoto Police Department violated his constitutional rights.[1] The Texas Defendants moved for summary judgment, arguing that (1) no constitutional violation occurred, (2) qualified immunity bars

[1] Prince also sued the Anchorage Police Department, but this Court granted APD's motion to dismiss in a separate order. (Dkt. 1; Dkt. 50)

recovery, and (3) the municipality cannot be liable. As explained below, the motion is **GRANTED**.

## I. BACKGROUND FACTS

In 2002, an Oklahoma state court convicted Delano Prince of rape and forcible sodomy . (Dkt 19-4; Dkt. 19-5) After being released from prison, Prince moved to DeSoto, Texas, where he registered as a sex offender. (Dkt. 19-6) A few years later, Prince provided notice to Texas that he intended to move once again. (Dkt. 19-7)

Prince then moved to Oklahoma and apparently registered as a sex offender. (Dkt. 22-1) But after that, Prince moved without updating his address, and he was convicted of failing to stay properly registered in Oklahoma. (Dkt. 22-1; Dkt. 22-2; Dkt. 1 at 8-9) Ultimately, Prince moved to Alaska in 2020, where he lived until the events giving rise to this case. (Dkt. 1 at 9)

In 2025, Detective Jones was working for the DeSoto Police Department reviewing sex-offender registration records. (Dkt. 19-2 at 3) Prince's file showed that he intended to move, but there was no report confirming where he had moved and whether he had registered. (Dkt. 19-7; Dkt. 19-2 at 3) Detective Jones' research also uncovered (1) Prince's conviction for failing to properly register in Oklahoma and (2) that the 2025 National Sex Offender Registry showed that Prince never registered anywhere after leaving DeSoto, Texas. (Dkt. 19-2 at 3-4)

Detective Jones believed that these facts constituted probable cause that Prince was violating Texas law. A Texas statute requires registered sex offenders to register in a new jurisdiction within seven days of moving there. Tex. Code. Crim. Proc. Ann. art. 62.055(a)

(West 2025). Sex offenders also have an obligation to "report a change of address to the proper authorities . . . after a move." *Young v. State*, 341 S.W.3d 417, 427 (Tx Crim. App. 2011). Jones submitted an affidavit for an arrest warrant saying that Prince failed to satisfy these registration obligations, and a Texas judge found that there was probable cause to issue a warrant for Prince's arrest. (Dkt. 19-9) The warrant was sent to Alaska, where Prince was thought to live, and the Anchorage Police Department arrested him at his home. (Dkt. 19-2 at 5-6)

Texas then declined to prosecute Prince. (Dkt. 19-2 at 5-6) As noted above, it turns out that Prince initially registered correctly in Oklahoma. Detective Jones may have believed that, because Prince was convicted for a registration violation in Oklahoma, he *never* registered there at all. But it appears that Prince properly registered in Oklahoma at one time, and he was convicted for coming out of compliance with Oklahoma law. (Dkt. 22-1; Dkt. 22-2) Detective Jones' (ultimately mistaken) theory was corroborated by research in the National Registry, which (incorrectly) failed to reflect that Prince properly registered in Oklahoma and perhaps elsewhere.[2] (Dkt. 19-2 at 5-6) Once Texas prosecutors realized the situation, they declined to proceed with the case. (Dkt. 19-2 at 5-6) Prince then brought this lawsuit for monetary damages under 42 U.S.C. § 1983.

---

[2] Prince apparently registered in Oklahoma, Washington, and Alaska after leaving Texas. (*See* Dkt. 19-2 at 5-6) It is unclear why those registrations were not entered into the National Registry. (Dkt. 19-10)

## II. LEGAL STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the "initial burden of demonstrating the absence of a genuine issue of fact for trial." *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If this showing is made, the non-moving party must offer evidence "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence and "facts must be viewed in the light most favorable to the nonmoving party" at this stage. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

### A. Detective Jones did not violate the Fourth Amendment.

The Fourth Amendment prohibits unreasonable seizures and false arrests. But a plaintiff cannot prevail on a false arrest claim if there was probable cause for the arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Probable cause exists when officers have knowledge or reasonably trustworthy information showing that a crime was committed by the person under arrest. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). Of course, officers cannot lie to create probable cause where it does not exist. It thus violates the Fourth Amendment for officers to make false statements when seeking a warrant if the falsehood is (1) material to the warrant application and (2) made "knowingly and deliberately, or with reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Here, there was probable cause to arrest Prince, and there is

no evidence that Detective Jones fabricated evidence to secure Prince's arrest warrant. The false arrest claim thus fails.

**1. There was probable cause to arrest Prince.**

The existence of probable cause is a complete defense to a false arrest claim. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). There is probable cause for an arrest when officers have knowledge or reasonably trustworthy information showing that a crime was committed by the person under arrest. *John*, 515 F.3d at 940. In criminal law, courts often treat law enforcement and court recordkeeping systems as presumptively reliable. *See Arizona v. Evans*, 514 U.S. 1 (1995) (saying it was "objectively reasonabl[e]" to rely on "police computer record" that later proved inaccurate); *also Herring v. United States*, 555 U.S. 135, 146 (2009). To overcome this, a plaintiff ordinarily must present some additional evidence that relying on the database was unreasonable. *Herring*, 555 U.S. at 147 (noting that "routine or widespread" database errors might make its use unreasonable).

Here, there was probable cause to arrest Prince. Under Texas law, people who must register as sex offenders have obligations before and after they leave the state. Tex. Code Crim. Proc. Ann. art. 62.055 (West 2025). For example, they have "a duty to report a change of address to the proper authorities both before and after a move." *Young v. State*, 341 S.W.3d 417, 427 (Tex. Crim. App. 2011). They also must register in the new jurisdiction within seven days of arriving there. Tex. Code Crim. Proc. Ann. art. 62.055(a) (West 2025). And if they do "not move on or before the anticipated move date or do[] not move to the new address provided," they must file a report with Texas explaining the issue. *Id.* § (e). In that situation, the sex-offender is supposed to send Texas weekly updates until

they register in a new jurisdiction. *See id.* §(e)(1)-(2). The purpose of this provision is to eliminate any gap in registration when a sex-offender leaves Texas for a new jurisdiction. *See Young*, 341 S.W.3d at 426-27.

Detective Jones had reasonably trustworthy information suggesting that Prince violated Texas law. In 2008, Prince registered as a sex offender in DeSoto Texas. (Dkt. 19-6) In 2010, he told Texas that he intended to move. (Dkt. 19-7) Even though Prince clearly left Texas, there is no evidence in the record that Prince reported this "change of address to the proper authorities . . . after" the move. *Young*, 341 S.W.3d at 427; *see* (Dkt. 19-2 at 3). Detective Jones believed that the absence of such a report was evidence that Prince violated Texas law. (Dkt. 19-2 at 5-6) Jones then reviewed the National Sex Offender Public Website, which did not show a current address for Prince. (Dkt. 19-8) He reviewed the National Registries website, which in 2025 showed that Jones had not registered anywhere after leaving Texas. (Dkt. 19-10) Jones also knew that Prince had been convicted for failing to register in Oklahoma after leaving Texas. (Dkt. 19-2 at 3; Dkt. 22-1) All of this was evidence that Jones did not "report in person to the local law enforcement authority" in the new jurisdiction where he lived. *See* Tex. Code Crim. Proc. An. art. 62.055(a) (West 2025). Detective Jones thus had some evidence both that Prince did not report his successful move back to Texas and that he failed to register in a new jurisdiction.

Relying on this evidence was objectively reasonable. After leaving DeSoto, Prince had an obligation to report back to Texas. *See Young*, 341 S.W.3d at 427. There is no evidence in the record that he made that type of report, a fact Detective Jones was aware of when he applied for the warrant. (Dkt. 19-2 at 3 ["[I]n any event Mr. Prince never

reported any registrations elsewhere to the DeSoto Police Department."]). Based on that alone, it would likely have been reasonable for Detective Jones to seek an arrest warrant. Additionally, the two databases that Detective Jones searched both yielded results showing that Prince had not registered anywhere after leaving Texas and that he was convicted for failing to register during that time. (Dkt. 19-8; Dkt. 19-6) These suggest that Prince failed to register in a new jurisdiction, which violates Texas law. *See* Tex. Code Crim Proc. Ann. art. 62.055(a) (West 2025). While the reports turned out to be partly inaccurate, there is nothing in the record showing that these national databases have "routine or widespread" errors. *See Herring*, 555 U.S. 147. Thus, combined with the absence of a report confirming his move to Oklahoma, it was objectively reasonable for Detective Jones to rely on these reports and conclude that Prince had failed to satisfy his reporting and registration obligations under Texas law.

**2. There is no evidence that Jones knowingly lied or recklessly disregarded the truth.**

Officers cannot knowingly lie or recklessly disregard the truth to create probable cause for an arrest. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). There is not a shred of evidence in the record showing that Detective Jones engaged in this type of misconduct.

Prince's main theory is that Detective Jones knew that Prince registered correctly in Oklahoma when applying for the arrest warrant. And in his view, successful registration in Oklahoma discharged his any obligation to report back to Texas. (Dkt. 22 at 14) But there is no evidence that Detective Jones knew about the successful Oklahoma registration. His affidavit says that he did not. (Dkt. 19-2 at 3) Prince countered with affidavits from his

Oklahoma criminal case, which suggest that he did initially register correctly. (Dkt. 22-1; Dkt. 22-1) But Detective Jones provided unrebutted evidence showing that he did not read those affidavits until this litigation began. (Dkt. 24-2 at 1) That undermines Prince's theory that Detective Jones knowingly lied.

And failing to dig up these affidavits does not demonstrate reckless disregard for the truth. If Jones had relied *solely* on Prince's Oklahoma criminal conviction, it may have been prudent to dig deeper into the file before seeking an arrest warrant. But Jones also searched the National Registry, which showed that Prince had not registered anywhere other than DeSoto. (Dkt. 19-8) This turned out to be incorrect, but both the conviction and registry report facially corroborated Detective Jones' theory. Relying on them does not show reckless disregard for the truth.

**B. Detective Jones has qualified immunity.**

Qualified immunity provides sweeping protection from liability to police officers serving in the line of duty. Officers are not liable for their actions, even for constitutional violations, "unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S 568, 571 (2026) (per curiam). The right in question must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 572 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). In other words, a right is clearly established only if precedent "places the constitutional question 'beyond debate.'" *Id.* (quoting *Rivas-Villegas*, 595 at 5) (citation modified).

Prince argues that Detective Jones violated clearly established law by "falsifying or omitting facts and ignoring exculpatory evidence" when securing an arrest warrant. (Dkt.

22 at 22) To be sure, it is clearly established that officers cannot lie or make material omissions to secure an arrest warrant. But as explained above, there is no evidence that Detective Jones engaged in that type of misconduct. To the extent Detective Jones made an honest mistake of law or fact when applying for the arrest warrant, qualified immunity shields him from liability. *See Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986) (saying the doctrine protects "all but the plainly incompetent or those who knowingly violate the law" and there is "ample room for mistaken judgments" in arrest warrant applications); *also Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009).

**C. The claim against the Desoto Police Department fails.**

Municipalities are not automatically liable for an employee's unconstitutional conduct. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). But they can be liable when action "pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Broadly speaking, there are two common ways to establish municipal liability for an employee's actions under § 1983. First, a plaintiff may prove that "the local government had a deliberate policy, custom or practice that was the moving force behind [a] constitutional violation." *Vanegas v. City of Pasadena*, 46 F. 4th 1159, 1167 (9th Cir. 2022) (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). Second, a plaintiff may prove that a municipality's failure to train or supervise its employees caused a constitutional violation. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021). Prince has failed to support either type of *Monell* claim.

Prince's claim against the Desoto Police Department fails for a straightforward reason: Its employee, Detective Jones, did not violate the Constitution as the above sections

explain. *Monell* liability requires "a constitutional tort" and none occurred here. *See* 436 U.S. at 691. That ends Prince's claim.

In any event, Prince does not explain how his allegations can be traced to a deliberate policy, custom, or practice of the Department. First, he argues that the Department "failed to keep accurate sex offender records for at least fifteen years." (Dkt. 22 at 24) But even if that is true, there is no indication that the Department "deliberately" chose not to maintain accurate records. Moreover, the policy or practice at issue must be the "moving force" behind the constitutional violation. *See AE ex rel. Hernandez*, 666 F.3d at 636. But the Department's failure to maintain accurate records was simply not the "moving force" behind the conduct at issue in this lawsuit. Rather, the Department decided to *remedy* its recordkeeping problems, and Prince suffered consequences as a tangential result of that decision. Thus, Prince's claim cannot be based on the Department's alleged recordkeeping practices.

Prince next argues that he suffered harm due to the Department's "indifference in hiring practices." (Dkt. 22 at 27) But this type of *Monell* claim requires more than a single incident of unconstitutional conduct set against an otherwise lawful policy. *Benavidez*, 993 F. 3d at 1154-55 (affirming dismissal where claim focused on "the facts of a single incidence"). In other words, this type of liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (internal quotations and citation omitted). And here, Prince has not introduced any evidence about widespread, or even

repeated, concerns about the Department's hiring practices, so they cannot serve as the basis for his *Monell* claim.

Prince's failure-to-train claim may not proceed either. Here, Prince had to provide "sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training [or supervision] policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained [or supervised] their employees." *Benavidez*, 993 at 1153-54. As explained above, the first element is not met. But neither is the second. Prince's two-sentence argument is that the "hiring of an unfit officer to perform a critical function . . . without adequate training or oversight . . . supports a finding of deliberate indifference." (Dkt. 22 at 27-28) But there is no evidence that Detective Jones was unfit. Prince points out that Jones worked as a reserve police officer for decades. He then leaps to the conclusion that "Officer Jones had a desire to be in law enforcement but was deemed unfit." (Dkt. 25-26) That inference is not reasonable because there are many reasons to work as a reserve officer that have nothing to do with fitness for full-time duty, which leaves Prince with no evidence supporting his theory. Plus, Detective Jones' extensive work history undermines Prince's theory. (Dkt. 19-3) Absent more, hiring Jones simply does not, as a matter of law, constitute "deliberate indifference to constitutional rights." *Id.* at 1153. Prince's *Monell* claims thus fail.

## IV. CONCLUSION

The motion for summary judgment at Docket 19 is **GRANTED**.

IT IS SO ORDERED.

DATED September 15, 2026, at Anchorage, Alaska.

/s/ *Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge